UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: )<br>)<br>BARRY MILLER, and )<br>MARY MILLER a/k/a )<br>MARY HAYNE-MILLER a/k/a )<br>MARY HAYNE, )<br>         Debtors. )<br>_____) <br>)<br>TOWN AND COUNTRY CREDIT )<br>CORP., )<br>) <br>         Plaintiff )<br>v. )<br>)<br>MARK G. DEGIACOMO, CHAPTER 7 )<br>TRUSTEE OF THE ESTATE OF, )<br>BARRY MILLER, and )<br>MARY MILLER a/k/a )<br>MARY HAYNE-MILLER a/k/a )<br>MARY HAYNE, )<br>         Defendant. )<br>_____) | CHAPTER 7<br>CASE NO. 03-16731-JNF<br><br><br><br><br><br><br>ADVERSARY PROCEEDING<br>NO. 05-01318<br><br><br><br><br><br><br><br><br>DISTRICT COURT<br>DOCKET NO. 05-11341-NG |

**OPPOSITION OF THE CHAPTER 7 TRUSTEE TO TOWN AND COUNTRY CREDIT CORP.'S MOTION TO WITHDRAW ADVERSARY PROCEEDING**

The defendant Mark G. DeGiacomo, Chapter 7 Trustee (the "Trustee") for the estate of Barry Miller and Mary Miller a/k/a Mary Hayne-Miller a/k/a Mary Hayne (the "Debtors") hereby submits his Opposition to the plaintiff's, Town and Country Credit Corp. ("Town and Country"), Motion to Withdraw Adversary Proceeding pursuant to 28 U.S.C. § 157(d).  In support of his Opposition the Trustee states that Town and Country has failed to meet its burden of proof for withdrawal under 28 U.S.C. § 157(d) in that Town and Country has failed to: (1) establish that a "substantial and material" conflict exists between the United States Bankruptcy

307826-1                                                                 1

Code (the "Bankruptcy Code") and non-bankruptcy federal laws for this court to order mandatory withdrawal and (2) establish that "cause" exists for discretionary withdrawal.

I.   **STATEMENT OF FACTS**

1. On August 8, 2003 (the "Petition Date"), the Debtors filed a voluntary petition with the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court") pursuant to Chapter 7 of the Bankruptcy Code.

2. On August 8, 2003, pursuant to a Certificate of Appointment, the Trustee was appointed the Chapter 7 Trustee of the Debtors' estate.

3. On September 22, 2003, the Trustee filed a Report of No Distribution. On March 8, 2004 the case was closed.

4. On March 10, 2004, the Debtors filed a Motion with the Bankruptcy Court to Reopen the Case and a Motion to Avoid Judicial Liens recorded against the Debtors' real property located at 36 Beach Avenue, Swampscott, Massachusetts (the "Real Property").

5. On March 15, 2004, this case was reopened.

6. On April 19, 2004, the Bankruptcy Court entered an order allowing the Debtors' Motion to Avoid Judicial Liens (the "Order").

7. On May 14, 2004, the Bankruptcy Court entered an order discharging the Trustee and closing the case.

8. On June 9, 2004, a copy of the Order was recorded with the Essex County Registry of Deeds, Southern Essex District (the "Registry of Deeds") at Book 22971, Page 530. The Order recorded with the Registry of Deeds contains a marginal reference to the Real Property and was recorded in the Real Property's chain of title.

9. On August 19, 2004, the Trustee filed a Motion to Reopen the Case.

10. On August 23, 2004, the Court entered an order allowing the Trustee's Motion to Reopen the Case.

11. On November 11, 2004, the Debtors granted a mortgage to Town and Country on the Real Property (the "Mortgage).

12. On December 6, 2004, Town and Country recorded the Mortgage with the Essex County Registry of Deeds at Book 23715, Page 246.

13. The Debtors granted the Mortgage to Town and Country to secure a $300,000 promissory note executed by the Debtors.

14. On March 16, 2005, the Trustee filed a Motion to Sell the Real Property by public auction which was allowed by the Bankruptcy Court on April 18, 2005.

15. On March 16, 2005, the Trustee served his Notice of Intended Sale on all interested parties (the "Notice of Sale"). The Notice of Sale indicated that the Real Property would be sold by public auction on April 28, 2005 (the "Auction").

16. On April 27, 2005, Town and Country filed a Complaint with the Bankruptcy Court seeking an order enjoining the Auction (the "Adversary Proceeding").

17. On April 28, 2005, the Bankruptcy Court denied Town and Country's request to enjoin the Auction but it entered the following order: "that the Chapter 7 Trustee not disburse any of the proceeds of sale until such time as the court determines the validity of the plaintiff's mortgage." Docket entry No. 4 in the Adversary Proceeding.

18. On May 27, 2005, the Trustee closed on the sale of the Real Property to the highest bidder at the Auction for the sale price of $320,000.

19. On May 12, 2005, the Trustee filed his Answer and Counterclaim to Town and Country's Complaint in the Adversary Proceeding.

20.     The Trustee's Counterclaim contained two counts against Town and Country. The first count requested a judgment declaring the Mortgage void under 11 U.S.C § 362(a)(5) as a violation of the automatic stay and the second count requested a judgment avoiding the Mortgage under 11 U.S.C. § 549(a) as a unauthorized postpetition transfer.

21.     On June 10, 2004, Town and Country filed a Complaint with the District Court against the Trustee, the Debtors and others (Docket No. 05-11223-RWZ) (the "District Court Complaint" or "District Court Proceeding").  The District Court Complaint contains a declaratory judgment count against the Trustee, a count against Debtors seeking to except the Mortgage debt from discharge under § 523 of the Bankruptcy Code and other tort and equitable counts against the Debtors and the other defendants.

22.     On June 15, 2005, Town and Country filed a Motion to Withdraw the Adversary Proceeding pursuant to 28 U.S.C. 157(d) (the "Motion").  On June 21, 2005 the Bankruptcy Court transmitted the Motion to the District Court for determination pursuant to Fed. R. Bankr. P. 5011.

## II.     ARGUMENT

The district courts have original, but not exclusive, jurisdiction over all civil proceedings arising under the Bankruptcy Code, or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b).  Each district court, however, may provide that such proceedings shall be "referred the bankruptcy judges for the district."  28 U.S.C. § 157(a).  In the District of Massachusetts, all such proceedings are automatically referred to the Bankruptcy Court pursuant to LR 201.  However, as in this case, a party may request by Motion pursuant to 28 U.S.C. § 157(d) that reference be withdrawn.  For the reasons set forth below, the Court should deny Town and Country's Motion to Withdraw the Adversary Proceeding.

**A.   Withdrawal of the Reference is Not Mandatory Because the Counterclaims Do Not Require Consideration of Non-Bankruptcy Federal Statutes Regulating Interstate Commerce**

28 U.S.C. § 157(d) governs mandatory withdrawal of the reference.  Section 157(d) provides in relevant part:

> …The district court shall, on timely motion of any party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting intestate commerce.

Mandatory withdrawal under 28 U.S.C. 157(d) is narrowly applied.  <u>Keene Corp. v. Williams Bailey & Wesner LLP (In re Keene Corp.)</u>, 182 B.R. 379, 382 (S.D.N.Y 1995).  Mandatory withdrawal is only appropriate where the moving party shows that "substantial and material" conflicts exist between non-bankruptcy federal statutes and the Bankruptcy Code.  <u>Id</u>.  Town and Country had failed to establish that a "substantial or material" conflict exists between the Counterclaims asserted by the Trustee in the Adversary Proceeding and non-bankruptcy federal statutes.

Before the Court can analyze whether a "substantial or material" conflict exists the Court, as a threshold matter, must find that non-bankruptcy federal statues are implicated in the proceeding in question.  Here, the relevant proceeding against which withdrawal is sought is the Adversary Proceeding.  Neither the Trustee or Town and Country have raised any non-bankruptcy federal statutory issues in the Adversary Proceeding.  As discussed below, the only claims at issue in the Adversary Proceeding involve the Counterclaims against Town and Country under §§ 362(b) and 549(a) of the Bankruptcy Code, which are core proceedings under 28 U.S.C. § 157(b)(2).  Because no non-bankruptcy federal statues are implicated in the Adversary Proceeding, the Court does not have to analyze whether a "substantial or material"

conflict exists.  Therefore, Town and Country has no grounds to seek mandatory withdrawal of the Adversary Proceeding.

Notwithstanding the above, Town and Country makes reference in the Motion to the federal mortgage fraud statute, 28 U.S.C. § 1011 (the "Mortgage Fraud Statute"), as grounds for withdrawal.  Town and Country's passing reference to the Mortgage Fraud Statute in the Motion is insufficient for mandatory withdrawal for two reasons.  First, the reference to the Mortgage Fraud Statue relates to a claim asserted by Town and Country against the Debtors in the District Court Proceeding.  The District Court Proceeding is not the proceeding in which withdrawal of the reference sought.  Therefore, the fact that the Mortgage Fraud Statue has been raised in the District Court Proceeding is not relevant to the resolution of the Counterclaims in the Adversary Proceeding.  Second, to the extent that this Court finds that it must consider the Mortgage Fraud Statute in connection with the resolution of the Adversary Proceeding, it should deny Town and Country's request for mandatory withdrawal because no "substantial and material" conflict exists between the Mortgage Fraud Statue and the Counterclaims.

Because the Court need not consider any non-bankruptcy federal statutes in resolving the Adversary Proceeding and because no "substantial and material" conflict exists between the Mortgage Fraud Statue and the Counterclaims, Town and Country has failed to meet its burden with respect to mandatory withdrawal under 11 U.S.C. 157(d).  Accordingly, the Court should deny the Motion.

307826-1                                                        6

**B.     Town and Country Has Not Shown That Cause Exists
        For Discretionary Withdraw the Reference**

28 U.S.C. § 157(d) governs discretionary withdrawal of the reference. Section 157(d) provides in relevant part:

> (d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown…

A party that seeks to withdraw the reference bears the burden of demonstrating that cause exists for discretionary withdrawal. United States v. Kaplan, 146 B.R. 500, 503 (D. Mass 1992). Town and Country has failed to meets its burden of demonstrating that cause exists in this case for discretionary withdraw of the reference. In considering discretionary withdrawal, the Court must consider whether the following factors balance in favor of the District Court, rather than the Bankruptcy Court, in adjudicating the Adversary Proceeding:

> (1) judicial economy;
>
> (2) whether withdrawal would promote uniformity of bankruptcy administration;
>
> (3) reduction of forum shopping and confusion;
>
> (4) conservation of debtor and creditor resources;
>
> (5) expedition of the bankruptcy process; and
>
> (6) whether a jury trial has been requested

Id. citing Holland America Ins. Co. v. Succession of Roy, 777 F.2d 992, 999 (5th Cir. 1985). See also Orion Pictures Corp. v. Showtime Networks, Inc. (In re: Orion Pictures Corp.), 4 F.3d 1095, 1101 (2nd Cir. 1993). Discretionary withdrawal is a narrow exception to the general rule that bankruptcy proceedings should be adjudicated in the bankruptcy court. Id. at 504 (withdrawal requires a "clear showing of cause"). Here, all the factors weigh in favor of the Adversary Proceeding being adjudicated by the Bankruptcy Court.

1. **Because the Counterclaims are Core Proceedings, Judicial Economy and Uniformity of Bankruptcy Administration Require That the Bankruptcy Court Adjudicate the Adversary Proceeding**

In determining "judicial economy" and "uniformity of bankruptcy administration," the Court must consider first whether the proceeding in question is core or non-core. Orion Pictures, 4 F.3d at 1101 ("a district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon that issue that questions of efficiency and uniformity will turn"). Whether the claim is core or non-core is the "most important" factor. Official Committee of Unsecured Creditors v. Lay (In re: Enron Corp.), 295 B.R. 21, 25 (S.D.N.Y. 2003) citing In re: Burger Boys, Inc., 94 F.3d 755, 762 (2nd Cir. 1996). Although, bankruptcy courts may render final judgments in core proceedings, they may only issue proposed findings of fact and conclusions of law in non-core proceedings. 28 U.S.C. § 157(b) and (c)(1). Upon the objection of a party, the bankruptcy court's determinations in non-core proceedings are subject to *de novo* review. 28 U.S.C. § 157(c)(1). The potential for *de novo* review by the district court in non-core proceedings tips the balance of the judicial economy and uniformity factors in favor of the district court because unnecessary costs and delay could be avoided by a single proceeding in the district court. Growe v. Great Northern Paper, 2005 U.S. Dist. LEXIS 9537 at *6 (D. Me. 2005) citing Orion Pictures, 4 F.3d at 1101. Conversely, in core bankruptcy proceedings the judicial economy and uniformity factors favor the bankruptcy court because "hearing core matters in a district court could be an inefficient allocation of judicial resources given that the bankruptcy court generally will be more familiar with the facts and issues." Id. quoting Orion Pictures, 4 F.3d at 1101. Moreover, the bankruptcy court can use its considerable expertise to ensure the uniform administration of the Bankruptcy

Code in core proceedings. <u>In re: Magnesium Corporation of America</u>, 2004 U.S. Dist. LEXIS 9389, at *5-6 (S.D.N.Y. 2004).

28 U.S.C. § 157(b)(2) specifies that the following matters are among the proceedings that are considered core:

- (A) matters concerning the administration of the estate;…

- (C) counterclaims by the estate against person filing claims against the estate;…

- (K) determinations of the validity, extent, or priority of liens; [and]…

- (O) other proceeding affecting the liquidation of the assets of the estate or the Adjustment of the debtor-creditor…relationship…

28 U.S.C. § 157(b)(2)(A), (C) and (K). Here, it is indisputable that the Trustee's Counterclaims[1] in the Adversary Proceeding are core proceedings.

The Counterclaims are core proceedings under 28 U.S.C. § 157(b)(2)(K) because the Counterclaims seek to void the Mortgage as violation of the automatic stay and to avoid the mortgage as an unauthorized postpetition transfer. <u>See</u> <u>also</u> <u>Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)</u>, 304 F.3d 223, 229 (the court held that proceedings can also be characterized as core by their nature if "either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings,…or (2) the proceedings directly affect a core bankruptcy function."). The fundamental nature the Counterclaims requires the Court to make a determination regarding the validity of the Mortgage given the provisions contained in the two sections of the Bankruptcy Code. Therefore, this Court should rule that the Counterclaims are core proceedings.

---

[1] The Opposition only addresses the Counterclaims in the Adversary Proceeding because Town and Country's claim to enjoin the Auction was denied by the Bankruptcy Court's order dated April 27, 2005, and, in any event, such claim has been mooted by the subsequent Auction.

In addition the Counterclaims are core proceedings under 28 U.S.C. § 157(b)(2)(A) and (O) because they affect the administration of the bankruptcy case, the liquidation of the estate assets and the adjustment of the debtor-creditor relationship. Furthermore, the Counterclaims are core under 28 U.S.C. § 157(b)(2)(B) because they are counterclaims filed by the Trustee in response to Town and Country's Complaint against the Trustee to enjoin the Auction.

Notwithstanding the core nature of the Counterclaims, the Court may be tempted consolidate the Adversary Proceeding into the District Court Proceeding in the interests of judicial economy because both proceedings are related to the Mortgage. Here, however, consolidation would not serve the interests of judicial economy.

In the Adversary Proceeding the Trustee is seeking a determination with respect to validity of the Mortgage within context of the Bankruptcy Code. In the District Court Proceeding, Town and Country is seeking damages from potentially responsible parties in the event that the Mortgage is deemed invalid under the Bankruptcy Code. The nature of the claims in the two proceedings requires that the Bankruptcy Code issues raised in the Adversary Proceeding regarding the validity of the Mortgage be decided first. Therefore, if the Court were to consolidate the proceedings (1) the parties would be forced to waste judicial resources litigating claims between multiple parties which could be mooted if the Court finds that the Mortgage was valid and/or (2) the Court would have to bifurcate the consolidated proceedings in order to first determine the validity of the Mortgage under the Bankruptcy Code. Accordingly, given these considerations, instead of consolidating the case the most logical approach here for the Court is to deny the Motion and allow the Bankruptcy Court to resolve the Bankruptcy Code issues relating to the validity of the Mortgage first. This approach is more economical because it will allow the Bankruptcy Court to use its expertise to decide the Counterclaims involving the

Bankruptcy Code issues and allow the District Court, if necessary, to decide the unrelated non-bankruptcy claims which depend on whether the Mortgage is valid.

Because the Counterclaims in the Adversary Proceeding fall within the list of core proceedings set forth in 28 U.S.C. § 157(b)(2), because the Counterclaims are unique to the bankruptcy proceeding, and affect a core bankruptcy function, and because the interests of judicial economy will not be served by withdrawal of the reference and the subsequent consolidation of the two proceedings, discretionary withdrawal of the reference is not appropriate in this case.  Accordingly, this Court should deny Town and Country's Motion.

### 2.      All Other Factors Favor Adjudication of the Adversary Proceeding by the Bankruptcy Court

Permitting the Bankruptcy Court to proceed with the Adversary Proceeding will promote uniformity of bankruptcy administration, discourage form shopping, conserve debtor and creditor resources and expedite the bankruptcy process.

Where proceedings are determined to be core, courts generally find that leaving the proceeding in the bankruptcy court will further the policy of promoting "uniformity of bankruptcy administration."  <u>Official Committee of Unsecured Creditors v. TSG Eqity Fund L.P. (In re: Envisionet Computer Services, Inc.)</u>, 276 B.R. 1, 5 (D. Me. 2002).  See also <u>Official Committee of Unsecured Creditors v. Motorola, Inc.  (In re: Irydium Operating LLC)</u>, 285 B.R. 822, 835 (S.D.N.Y. 2002) ("the consistent administration of  bankruptcy law would be best served by the bankruptcy court adjudicating the adversary proceeding, especially when the adversary proceeding includes five traditionally core [proceedings]…").  Many courts reach this conclusion because the goal of obtaining uniformity of bankruptcy proceedings is embodied in both the Bankruptcy Code and in Congress's decision to vest bankruptcy court judges with the power and authority to enter final orders and judgments in core proceedings.  See 28 U.S.C.

157(b); see also In re: Irdium Operating LLC, 285 B.R. at 835; Braniff Airways, Inc. v. United Airlines, Inc. (In re: Braniff Airways, Inc.), 33 B.R. 33, 34 (Bankr. N.D Tex. 1983) ("[w]ith the enactment of the Bankruptcy Code in 1978, Congress created a comprehensive framework to deal with the specialized area of bankruptcy problems, intending to centralize all disputes concerning such matters in the Bankruptcy Court…")  Uniformity of bankruptcy administration requires that the Adversary Proceeding proceed in the Bankruptcy Court "in which a specialized corps of full-time bankruptcy judges [are available to] assist district court judges in adjudicating bankruptcy matters…" Vickers Associates, Ltd. v. Urice (In re: Jaritz Industries, Ltd.) 151 F.3d 93, 98 (3rd Cir. 1998) citing Northern Pipeline Construction Co. v. Marathon Pipeline, 458 U.S. 50 (1982).  This centralization of core proceedings in a the bankruptcy courts ensures that the reorganization of debtors occurs in an efficient fashion ant the district courts are not bogged down by a large bankruptcy caseload.  Id. at 98.  Because the Adversary Proceeding contains core proceedings, the policy of uniform bankruptcy administration factor weighs in favor of adjudicating the Adversary Proceeding in the Bankruptcy Court.

Proceeding with the Adversary Proceeding in the Bankruptcy Court will also discourage forum shopping.  The Trustee asserted the Counterclaims in the Bankruptcy Court because the Bankruptcy Court is the appropriate forum to adjudicate such claims and because Town and Country initially chose the Bankruptcy Court as its forum to adjudicate its claim to enjoin the Auction.  Notwithstanding the fact that Town and Country chose the Bankruptcy Court as its forum when it initiated the Adversary Proceeding, it now seeks an alternative forum to hear the Counterclaims.

In support of its Motion, Town and Country argues that cause exists to withdraw the reference because the claims in the District Court Complaint are non-core and because the

307826-1                                                                12

interests of judicial economy require withdrawal of the reference.  As discussed above, the interests of judicial economy favor adjudicating the Counterclaims in the Bankruptcy Court.  Moreover, Town and Country's argument with respect to the non-core nature of the claims in the District Court Complaint also fails.  The alleged non-core nature of the claims in the District Court Complaint are insufficient to show cause for withdrawal because the nature of these claims are not relevant in determining if cause exists to withdraw the reference with respect to the Counterclaims in the Adversary Proceeding.  The relevant proceeding for purposes of determining the Motion is the Adversary Proceeding and not the District Court Proceeding.  This argument is a transparent attempt by Town and Country to divert the Court's attention away from the core nature of the Counterclaims.  Therefore, adjudicating the Adversary Proceeding in the Bankruptcy Court will discourage Town and Country's forum shopping efforts.  Accordingly, the policy factor to discourage forum shopping weighs in favor of the Bankruptcy Court.

Proceeding in the Bankruptcy Court is also the best way to conserve debtor and creditor resources.  Proceeding with core proceedings in the District Court would be an inefficient use of judicial resources given that the Bankruptcy Court:  (1) holds hearings on these types of core proceedings more frequently; (2) maintains an efficient management system for such matters (3) is familiar with the procedural history and the facts relating to the Debtors, and (4) is well-versed in the specialized bankruptcy principles at issue in the Counterclaims.  In re: Enron Corp., 295 B.R. at 26.  Therefore, the creditor and debtor resources are best conserved by adjudicating the Adversary Proceeding in the Bankruptcy Court.  Accordingly, the policy factor of conserving debtor and creditor resources weighs in favor of the Bankruptcy Court.

Proceeding in the Bankruptcy Court will expedite the bankruptcy process. The Bankruptcy Court has been overseeing the Debtors' case for almost two years. <u>Executive Risk Indemnity, Inc. v. Brooks (In re Jackson Brook Institute, Inc.), 280 B.R. 779</u>. ("withdrawal of the reference of the [proceeding] in the context of the longstanding bankruptcy case, with whose facts the bankruptcy judge is infinitely more familiar, would waste resources and would not expedite the bankruptcy process"). Moreover, if the reference is withdrawn, it is likely that the Counterclaims will be consolidated with the claims in the District Court Complaint. This would create a substantial delay in adjudicating the Counterclaims because the Counterclaims would have to be tried along with the other alleged non-core claims in the District Court Proceeding. Therefore, the policy factor of expediting the bankruptcy process favors adjudicating the Adversary proceeding in the Bankruptcy Court.

Because Town and Country has failed to meet its burden of demonstrating that cause exists for discretionary withdrawal of the reference, this Court should deny the Motion.

## II.  CONCLUSION

For the reasons set forth above, the Trustee respectfully requests that the Court enter an Order denying Town and Country's Motion to Withdraw the Adversary Proceeding.

Respectfully submitted,

MARK G. DEGIACOMO, CHAPTER 7 TRUSTEE OF THE ESTATE OF BARRY MILLER, and MARY MILLER a/k/a MARY HAYNE-MILLER a/k/a MARY HAYNE,

By his attorneys,

/s/ Ryan M. MacDonald
Mark G. DeGiacomo, Esq. BBO #118170
Ryan M. MacDonald, Esq. BBO #654688
Murtha Cullina LLP
99 High Street
Boston, MA  02110
617-457-4000 Telephone
617-482-3868 Facsimile

Dated: June 29, 2005